**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────

DANIEL CAMPBELL,

                              Plaintiff,

        v.

KAMRUL A. KHAN, et al.,

                              Defendants.

                                         No. 9:21-CV-01021
                                         (GLS/CFH)

─────────────────────────────

**APPEARANCES:**                          **OF COUNSEL:**

DANIEL CAMPBELL
159-01 134th Ave
2nd Floor
Jamaica, New York 11434
Plaintiff pro se

Attorney General for the                  ALEXANDER POWHIDA, ESQ.
State of New York                         Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Daniel Campbell ("plaintiff"), an inmate who was, at all relevant times,

in the custody of the New York State Department of Corrections and Community

Supervision ("DOCCS") at the Central New York Psychiatric Center ("CNYPC"), brings

this action pursuant to 42 U.S.C. § 1983, alleging that defendants Dr. Kamrul A. Khan,

─────────────────────

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Dr. Jean Liu, and Dr. Mark Beale[2] (collectively "defendants") violated his constitutional rights under the Fourteenth Amendment.  See Dkt. No. 2 ("Compl.").  Presently before the Court is defendants' motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  See Dkt. No. 51.  Plaintiff opposed, and defendants replied.  See Dkt. Nos. 56, 57.  For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

On review of defendants' motion for summary judgment, the facts will be related herein in the light most favorable to plaintiff as the nonmoving party.  See Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record . . . to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.").

### A. Plaintiff's Recitation of the Facts[3]

Plaintiff was temporarily confined to CNYPC in 2018, 2019, and 2020, due to a "mental health breakdown."  Compl. at 16, 22.[4]  While at CNYPC, plaintiff received pills and injections of Risperdal, a "dangerous drug," without his consent or a court order.  Id.

---

[2] In plaintiff's complaint, he spelled defendant's last name as "Beal."  See Compl. at 1, 3.  In his declaration, defendant clarifies that his last name is spelt "Beale."  See Dkt. No. 51-1 at 1, ¶1.  The Clerk of the Court is respectfully directed to correct the case caption to reflect the spelling of defendant's name as Dr. Mark Beale.

[3] To the extent that plaintiff's exhibits are relevant to the causes of action at issue in the present motion, the Court will consider them as part of the complaint.  See Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." (internal quotation marks and citations omitted)).

[4] Citations are to the pagination generated by CM/ECF, located in the header of each page.

at 5, 6, 22.[5]  Dr. Mark Beale, Dr. Jean Liu, and Dr. Kamrul A. Khan prescribed the medication.  See id. at 22, 26.

Upon plaintiff's first admission to CNYPC in September 2018, Dr. Beale became his treating psychiatrist.  See Compl. at 6, 22.  Dr. Beale ordered plaintiff to take Risperdal, but plaintiff responded that he "couldn't take it [be]cause [he] had a problem with it, that caused legal action."[6]  Id.  Dr. Beale, however, "ordered that either [plaintiff] take it by mouth or [he] will be injected with it."  Id.  Plaintiff subsequently took the medication, and "[a]fter about a month, [he] began to notice that something was wrong[;] [he] was growing [ ] breast[s and had] soreness of the nipple[s]."  Id. at 77.  Plaintiff complained to Dr. Beale, who responded that "he is aware of the side effects" and insisted that plaintiff continue taking the drug.  Id. at 78.

At some unspecified point, Dr. Liu took over plaintiff's care and treatment.  See Compl. at 78.  Plaintiff "complained to her that the side effects were worsening and that he no longer wanted to use [Risperdal]."  Id.  "She denied [his] request and continued to give [him the medication] for a period of 3 to 4 months."  Id.  Plaintiff was discharged from CNYPC around March 23, 2019, to Auburn Correctional Facility.  See id.

Plaintiff was recommitted to CNYPC on January 8, 2020.  See Compl. at 78.  Upon his second admission, Dr. Khan treated plaintiff.  See id.  Dr. Khan told plaintiff he had "to take Risperdal again," and if he "wouldn't take the medication willingly, it would be

---

[5]  Risperdal (the generic version of Risperidone) is an antipsychotic prescription drug used to treat schizophrenia and bipolar disorder.  See Compl. at 64, 68, 72.

[6]  As discussed infra, plaintiff took Risperdal from 2009 to 2012 and suffered side effects.  He subsequently brought a separate legal action, which the state court dismissed in 2017.  See infra Subsection I.B.1.

given over objection with a court order."  Id.  Plaintiff "unwillingly took the medication for the next four months while the side effects continued to worsen."  Id.

In April 2020, plaintiff complained to Dr. Khan that he was not "feeling right" and that he had developed female breasts.  Compl. at 22.  As a result, Dr. Khan ordered lab tests which revealed high levels of prolactin.  See id.  The next day, plaintiff was diagnosed with gynecomastia.  See id. at 18, 22.  Given the lab work and the diagnosis, Dr. Khan "immediately discontinued [plaintiff] of Risperdal."  Id. at 22.

Plaintiff filed multiple complaints and grievances with CNYPC between September 3, 2020, and October 26, 2020, claiming that Dr. Beale, Dr. Liu, and Dr. Khan improperly prescribed him Risperdal, resulting in enlarged, painful breasts as well as mental distress.  See Compl. at 26-28, 36, 40, 44, 48, 50.  Plaintiff claims that he fully exhausted each grievance within CNYPC, but "[n]othing significant has happened to remedy the unnatural growth of female breasts [and] tremendous pain[.]"  Id. at 8.

### B. Defendants' Recitation of the Facts

In support of this motion, defendants filed a Statement of Material Facts.  See Dkt. No. 51-15.  As discussed infra, plaintiff failed to properly respond to defendants' Statement of Material Facts.  See infra Subsection III.A.2; see also Dkt. No. 56.

### 1. Plaintiff's Prior Treatment with Risperdal

Since 1998, plaintiff has been treated for mental health issues associated with his diagnoses of schizophrenia, bipolar disorder, and borderline personality disorder.  See Dkt. No. 51-10 at 12, ll. 7-11; see also Dkt. No. 51-16 at 8.  Plaintiff was initially prescribed and administered Risperdal in 2009, while he was housed at Creedmoor Psychiatric Center.  See Dkt. No. 51-10 at 18, ll. 2-10; see also Dkt. No. 51-15 at 2, ¶5.

In 2012, plaintiff discontinued using Risperdal "because he reportedly began to experience an elevated level of the hormone prolactin, which promoted the growth of fatty-tissue in his breast, a condition known as gynecomastia."  Dkt. No. 51-16 at 8-9; see Dkt. No. 51-10 at 18-20.  Plaintiff subsequently brought a state court action "in which he made claims, inter alia, of product liability and medical malpractice against Risperdal's manufacturer, his treating physician at the time, and the facility at which he was being treated."  Dkt. No. 51-16 at 9; see generally Dkt. No. 51-12.  In that action, plaintiff alleged that Risperdal caused various side effects, such as "an increase in the production of the female hormone, prolactin, in males, resulting in a serious risk of enlargement of breast in males, known as gynecomastia."  Dkt. No. 51-12 at 4, ¶11.  However, "[p]laintiff's state court action was dismissed on summary judgment motions by a Decision and Order, dated April 10, 2017."  Dkt. No. 51-16 at 9; see Dkt. No. 51-13.

### 2. Plaintiff's First Admission to CNYPC

On September 13, 2018, plaintiff was transferred from Mid-State Correctional Facility to CNYPC "after exhibiting signs of psychological decompensation."  Dkt. No. 51-15 at 3, ¶11; see Dkt. No. 51-1 at 2-3, ¶7.  Upon admission, plaintiff saw Dr. Beale.  See Dkt. No. 51-1 at 3, ¶8.  Dr. Beale "assessed [p]laintiff to be suffering from schizophrenia and borderline personality disorder[,] and counselled him to resume his medication regimen."  Dkt. No. 51-16 at 10.[7]  "Plaintiff refused Risperdal [ ] for approximately the first two-months of admission and his refusal was honored."  Dkt. No. 51-15 at 3, ¶17; see Dkt. No. 51-1 at 4, ¶14.

---

[7] "CNYPC policy is that upon admission patients are continued on all previously prescribed medications which are appropriate, until providers can adjust medications depending on symptom presentation and

In late November 2018, plaintiff began to "repeatedly request[ ] Risperdal"; thus, Dr. Beale wrote plaintiff a regular prescription.  Dkt. No. 51-16 at 11.  "From then until January 31, 2019, [p]laintiff complied voluntarily with the prescription of Risperdal from Dr. Beale, taking his medication on rounds via tablets."  Id.; see Dkt. No. 51-1 at 11-13, ¶42-51.  Throughout Dr. Beale's treatment, plaintiff "did not complain of any side-effects from the taking of Risperdal and he showed no evidence of suffering from such side-effects at that time."  Dkt. No. 51-1 at 13, ¶50.

"On or around January 31, 2019, treatment of [p]laintiff was transferred to Dr. Jean Liu[.]"  Dkt. No. 51-1 at 12, ¶45.  "At the time of transfer to Dr. Liu, [p]laintiff was already on a prescription of Risperdal and was compliant with his medication regimen."  Dkt. No. 51-16 at 11.  Plaintiff "expressed no objections to taking Risperdal, showed no signs of experiencing any side-effects, and did not complain of experiencing any side-effects as a result of taking Risperdal."  Dkt. No. 51-3 at 2-3, ¶8.  "On February 7, 2019, Dr. Liu discussed the benefits of taking an injectable, delayed release form of Risperdal to attempt to continue treatment without the need for daily pills."  Dkt. No. 51-16 at 11-12; see Dkt. No. 51-3 at 3, ¶11.  "Plaintiff agreed to the injections and remained compliant with his medication regimen until his discharge from CNYPC on March 20, 2019."  Dkt. No. 51-16 at 12.

"Plaintiff did not file any administrative complaints or grievances regarding his treatment during his initial treatment at [CNYPC] or 30-days after his discharge on March 20, 2019."  Dkt. No. 51-16 at 12; see generally Compl.[8]

---

manifestation."  Dkt. No. 51-1 at 3, ¶11.  "As a result, upon admission to CNYPC on September 13, 2018, with no current prescriptions, [Dr. Beale] suggested that [p]laintiff resume his medications[.]"  Id. at 3-4.

[8] According to CNYPC's Correction-Based Complaints Policy, "[c]omplaints may be initiated at any point during treatment and up to thirty calendar days after termination of services."  Dkt. No. 51-10 at 2.

### 3. Plaintiff's Second Admission to CNYPC

"After leaving CNYPC on March 20, 2019, [p]laintiff discontinued taking Risperdal." Dkt. No. 51-16 at 12; see Dkt. No. 51-10 at 79-80.  "Nine months after his discharge, following another incident at a DOCCS facility, Plaintiff returned to CNYPC on January 9, 2020."  Dkt. No. 51-16 at 12; see Dkt. No. 51-5 at 2.  Upon this second admission, plaintiff treated with Dr. Khan.  See Dkt. No. 51-16 at 12.  "Plaintiff specifically requested [Risperdal] for treatment and stated that he needed it to calm himself."  Id.; see Dkt. No. 51-5 at 2-3, ¶7.  "Over the following months, Dr. Khan followed with [p]laintiff's treatment, during which time [p]laintiff remained voluntarily compliant with his medications, including acceptance of [Risperdal]."  Dkt. No. 51-16 at 12.

On April 2, 2020, plaintiff "expressed for the first time his concern about the possible side-effects of Risperdal," and disclosed "his prior experience of gynecomastia."  Dkt. No. 51-16 at 12-13.  Thereafter, Dr. Khan ordered a blood test to ascertain plaintiff's prolactin levels.  See id.  "On April 13, 2020, [p]laintiff's blood test was returned and showed a significant increase in [his] prolactin levels."  Id.; see Dkt. No. 51-5 at 5, ¶17. Dr. Khan "immediately canceled" plaintiff's Risperdal prescription and "transitioned [him] to another medication."  Dkt. No. 51-16 at 13; see Dkt. No. 51-5 at 6, ¶¶18-19.  "Over the next two months, [p]laintiff's prolactin level was monitored and, by June, it was below normal levels."  Dkt. No. 51-16 at 13; see Dkt. No. 51-5 at 6-7, ¶¶21-22.  "Plaintiff continued to be followed throughout 2020 when he was discharged back to a DOCCS facility, but he was not provided Risperdal [ ] at any point after April 2, 2020."  Dkt. No. 51-16 at 13; see Dkt. No. 51-5 at 6, ¶20.

"Unlike his first treatment period at CNYPC, Plaintiff did file a complaint to grieve his treatment with [Risperdal] following his high prolactin lab result."  Dkt. No. 51-16 at 13. He filed a complaint on September 3, 2020, "and proceeded through the appeal process."  Id.; see Compl. at 26-28, 36, 40, 44, 48, 50, 61-62, 77-79.

### C. Procedural History

Plaintiff commenced this action on August 6, 2021, alleging, as relevant here, that Dr. Beale, Dr. Liu, and Dr. Khan violated his constitutional rights under the Fourteenth Amendment when they ordered and administered Risperdal against his will.  See generally Compl.  On May 15, 2023, defendants filed this motion pursuant to Fed. R. Civ. P. 56 seeking dismissal of all claims against them.  See Dkt. No. 51-16.  On July 8, 2023, plaintiff filed his untimely response seeking, inter alia, to reopen discovery.  See Dkt. No. 56.  Defendants replied on July 12, 2023.  See Dkt. No. 57.

### II.  Legal Standard

A motion for summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The moving party bears the burden of demonstrating the absence of disputed material facts by citing to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  FED. R. CIV. P. 56(c).  A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party meets this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 248 (citation omitted); see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "When ruling on a summary judgment motion, the district court . . . must resolve all ambiguities and draw all reasonable inferences against the movant."  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  Still, the nonmoving party cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)); see also Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) ("[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." (citation omitted)).

Where a party seeks judgment against a pro se litigant, or a pro se litigant moves for summary judgment, the Court must afford the pro se litigant special solicitude.  See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam).  As the Second Circuit explained,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]"  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro

se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[]" . . . .

Id. (citations omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally." (citations and quotation marks omitted)).

### III. Discussion

Plaintiff contends that Dr. Beale, Dr. Liu, and Dr. Khan violated his "14th amendment due process right[s]" by prescribing and administering Risperdal against his will.  Dkt. No. 51-10 at 126, ll. 19-21.  Plaintiff also asserts state law medical malpractice and negligence claims.  See Compl. at 3.  Defendants move for summary judgment, arguing that plaintiff "failed to establish the existence of a genuine factual dispute."  Dkt. No. 57-1 at 6.  In opposition, plaintiff moves to reopen discovery because, "[b]ased o[n] the information presented in defendants['] motion for summary judgment, there is [evidence] yet to be presented."  Dkt. No. 56 at 1.

### A. Procedural Issues

In their motion and in reply, defendants raise a number of procedural issues.  See Dkt. Nos. 51-16, 57-1.  Specifically, defendants argue that (1) plaintiff's opposition papers are untimely and should not be considered; (2) plaintiff failed to properly respond to their Statement of Material Facts; (3) plaintiff is not entitled to reopen discovery; and (4) plaintiff failed to exhaust his administrative remedies regarding his claims against Dr. Beale and Dr. Liu.  See Dkt. No. 51-16 at 28-29; see also Dkt. No. 57-1 at 4-9.

### 1. Plaintiff's Untimely Opposition Papers

N.D.N.Y. Local Rule 7.1(a)(3) provides that "[t]he Court shall not consider any [opposition papers] that are not timely filed . . . unless good cause is shown."  N.D.N.Y. L.R. 7.1(a)(3).  "However, it is well-established that pro se plaintiffs are 'entitled to certain latitude,' especially when facing a dispositive motion."  McAdoo v. Jagiello, No. 9:10-CV-355, 2011 WL 1577236, at *2 (N.D.N.Y. Apr. 26, 2011) (quoting Jemzura v. Pub. Serv. Comm'n, 961 F. Supp. 406, 415 (N.D.N.Y. 1997), and citing Murray v. Goord, 668 F. Supp. 2d 344, 353 (N.D.N.Y. 2009)).[9]

After defendants filed their motion for summary judgment on May 15, 2023, the Court notified plaintiff that his opposition papers were due on June 5, 2023.  See Dkt. Nos. 51, 53.  Plaintiff requested an extension of time to file and serve opposition papers, which the Court granted.  See Dkt. Nos. 54, 55.  The Court extended plaintiff's time to file opposition papers until July 5, 2023, with defendants' reply due on July 12, 2023.  See Dkt. No. 55.  As defendants point out, although plaintiff's opposition papers bear a type-written date of "7/5/23," plaintiff did not serve the response until July 8, 2023, as evidenced by the postage stamp on the transmittal envelope.[10]  See Dkt. No. 57-1 at 5; see also Dkt. No. 56 at 1.  Defense counsel and the Court received the opposition on July 11, 2023.  See Dkt. Nos. 56, 57-1 at 5.

Defendants contend that "[p]laintiff's opposition papers are untimely and no good cause excuse for the delay has been proffered."  Dkt. No. 57-1 at 5.  The undersigned

---

[9] All unpublished decisions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

[10] As indicated by the private address listed on the transmittal envelope, plaintiff was not incarcerated at the time he filed his opposition papers.  See Dkt. No. 56-2 at 1; see also Dkt. No. 27 (letter dated Mar. 16, 2022, advising the Court of his discharge and new post-release address).  Thus, the "prison mailbox rule" does not apply.  See, e.g., Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) (explaining that under the "prison mailbox rule," the date of filing is generally presumed to be the date that an inmate delivers his or her complaint to a prison guard for mailing) (citing Houston v. Lack, 487 U.S. 266, 270-71 (1988)).

agrees with defendants' assertions and notes plaintiff's failure to offer justification for his untimely filing. In light of special solicitude, and because plaintiff's three-day delay did not result in any appreciable harm or prejudice to defendants, plaintiff's response will be considered. See McAdoo, 2011 WL 1577236, at *2 ("Given the latitude owed to pro se litigants, and in an abundance of caution, [the] plaintiff's [late] response [to the defendant's motion] will be considered."); see also Brown v. City of Syracuse, No. 5:11-CV-668 (FJS/ATB), 2013 WL 1294085, at *1 n.2 (N.D.N.Y. Mar. 28, 2013) (considering the plaintiff's three-day late response, and advising the plaintiff "that the Court will not consider any late filings in the future"). The Court reminds plaintiff that he must abide by all court deadlines.

## 2. Statement of Material Facts

In support of the motion, defendants filed Statements of Material Facts. See Dkt. No. 51-15. Local Rule 56.1 requires a party moving for summary judgment to file and serve a Statement of Material Facts. See N.D.N.Y. L.R. 56.1(a). "The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue." Id. The opposing party is required to file a response to the Statement of Material Facts "admitting and/or denying each of the movant's assertions in matching numbered paragraphs." N.D.N.Y. L.R. 56.1(b). "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." Id. (emphasis omitted).

In response to defendants' motion for summary judgment, plaintiff filed a document entitled "Response to Motion for Summary Judgement [sic]." Dkt. No. 56. This

document is not properly responsive to defendants' Statement of Material Facts because it does not admit or deny defendants' "assertions in a short and concise statement, in matching numbered paragraphs." N.D.N.Y. L.R. 56.1(b); see generally Dkt. No. 56. Instead, this document contains arguments of law and a request to reopen discovery. See Dkt. No. 56. Defendants argue that because plaintiff failed to submit an adequate response to their Statement of Material Facts, the facts set forth in defendants' Statements of Material Facts must be deemed admitted. See Dkt. Nos. 57 at 3, ¶11; 57-1 at 3.

The undersigned is not required to "'perform an independent review of the record to find proof of a factual dispute[.]'" Prestopnik v. Whelan, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (quoting Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470-71 (2d Cir. 2002)). Although defendants argue, and the Local Rules provide, that the Court shall deem admitted any facts the nonmoving party fails to "specifically controvert," pro se plaintiffs are afforded special solicitude in this Circuit. N.D.N.Y. L.R. 56.1(b); see supra Section II. Accordingly, in deference to plaintiff's pro se status, the Court will independently review the record when evaluating defendants' motion for summary judgment, and "treat [plaintiff's] opposition as a response to" defendants' Statement of Material Facts. Johnson v. Lew, No. 1:13-CV-1072 (GTS/CFH), 2017 WL 3822047, at *2 (N.D.N.Y. Aug. 30, 2017) ("Out of special solicitude to [the p]laintiff as a pro se civil rights litigant, however, the Court will treat his opposition as a response to [the d]efendant's [ ] Statement, carefully reviewing it for any record-supported disputation of [the d]efendant's [ ] Statement."); see Perry v. Ogdensburg Corr. Facility, No. 9:10-CV-1033 (LEK/TWD), 2016 WL 3004658, at *1 (N.D.N.Y. May 24, 2016) (determining that

"although [the p]laintiff failed to respond to the statement of material facts filed by [the d]efendants as required under [the] Local Rule[s], the Court would invoke its discretion to review the entire record when evaluating the parties' respective [m]otions for summary judgment.").

### 3. Plaintiff's Request to Reopen Discovery

"Fed. R. Civ. P. 56(d) permits the Court to, among other things, delay consideration of a summary judgment motion and reopen discovery if a 'nonmovant,' such as plaintiff, 'shows by affidavit . . . that, for specified reasons, [he] cannot present facts essential to justify its opposition.'" Upson v. Wilson, No. 9:18-CV-1149 (LEK/CFH), 2022 WL 7278551, at *8 (N.D.N.Y. Mar. 11, 2022) (quoting FED. R. CIV. P. 56(d)), report and recommendation adopted, 2022 WL 4591874 (N.D.N.Y. Sept. 30, 2022).  "The Second Circuit 'has established a four-part test for [assessing] the sufficiency of [the] affidavit': the 'affidavit must include [1] the nature of the uncompleted discovery; [2] how the facts sought are reasonably expected to create a genuine issue of material fact; [3] what efforts the affiant has made to obtain those facts; and [4] why those efforts were unsuccessful.'" Id. (quoting Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994)).  "Even if the declaration satisfies the four requirements, this Court may deny a request for 'cumulative' or 'speculative' discovery materials, or a request based solely on 'bare, generalized assertions.'" Desrameaux v. Delta Air Lines Inc., No. 2:15-CV-347 (CBA/VMS), 2018 WL 1224100, at *6 (E.D.N.Y. Mar. 8, 2018) (quoting Alphonse Hotel Corp. v. Tran, 828 F.3d 146,151-52 (2d Cir. 2016)).[11]  The decision whether to

---

[11] This standard applies with equal force to pro se litigants.  See Lunts v. Rochester City Sch. Dist., 515 F. App'x 11, 13-14 (2d Cir. 2013) (summary order) (affirming grant of summary judgment against pro se plaintiffs because their sworn affidavits were insufficient under Rule 56(d) and they did not identify any "potentially discoverable evidence that would have raised a genuine issue of material fact as to any of

grant relief pursuant to Rule 56(d) is within the discretion of the district court.  See Crye Precision LLC v. Duro Textiles, LLC, 689 F. App'x 104, 106 (2d Cir. 2017) (summary order) (citing Alphonse Hotel Corp., 828 F.3d at 151).

Here, plaintiff urges the Court to deny defendants' motion for summary judgment as premature due to outstanding discovery.  See Dkt. No. 56 at 1.  Specifically, plaintiff claims defendants failed to present all information, and he is "entitled to the uncovering of [his] medical record to attest to [his] claims."  See id.  However, plaintiff did not submit an affidavit under Rule 56(d), which is sufficient to deny his discovery request.  See, e.g., Leckie v. Robinson, No. 17-CV-8727 (PGG/BCM), 2020 WL 5238602, at *8 (S.D.N.Y. Feb. 6, 2020) ("Pro se parties are not exempt from the requirements of Fed. R. Civ. P. 56(d).") (citations omitted), report and recommendation adopted, 2020 WL 2114846 (S.D.N.Y. May 4, 2020).

Even setting aside plaintiff's failure to submit an affidavit, his "motion for discovery pro se" fails to provide sufficient grounds to support a conclusion that discovery was inadequate.  See Dkt. Nos. 56, 57-1 at 4-5.  Plaintiff has not described any of the four categories of information required for Rule 56(d) discovery.  See Paddington Partners, 34 F.3d at 1138.  Plaintiff only states in general, conclusory terms that, "[b]ased on the information presented in defendants['] motion for summary judgment, there is information yet to be presented."  Dkt. No. 56 at 1; see Turner v. McDonough, No. 18-CV-4038 (AEK), 2021 WL 965626, at *2 (S.D.N.Y. Mar. 15, 2021) (declining to allow for further discovery where the pro se "[p]laintiff had more than enough time and

their claims"); see also Falso v. Rochester City Sch. Dist., 460 F. App'x 60, 61-62 (2d Cir. 2012) (summary order) (affirming denial of Rule 56(d) relief for pro se plaintiff because he did not submit affidavit sufficiently describing facts he sought to discover).

opportunity to pursue discovery" and did not "present[ ] any specific reasons why he was not able to obtain the discovery he now seeks during the discovery phase"); <u>see also</u> <u>Corley v. Vance</u>, No. 15-CV-1800 (KPF), 2019 WL 3841939, at *13 (S.D.N.Y. Aug. 15, 2019) ("[The pro se p]laintiff's conclusory allegations of incomplete discovery are an insufficient basis under Rule 56(d) to deny [the defendant]'s motion [for summary judgment]."). As indicated above, "a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under [Rule 56(d)]." <u>Paddington Partners</u>, 34 F.3d at 1138 (internal quotation marks and citations omitted).[12]

Moreover, as defendants assert, although plaintiff requests "the uncovering of [his] medical record," defendants have demonstrated that they provided him a certified copy of his medical records in pretrial discovery and with the motion for summary judgment. Dkt. No. 56 at 1; <u>see</u> Dkt. Nos. 52, 52-1, 52-2. As plaintiff has merely speculated as to the existence of other documents, it is recommended that his request for further discovery be denied. <u>See</u> <u>Gumbs v. Dynan</u>, No. 11-CV-857, 2012 WL 3705009, at *17 (E.D.N.Y. Aug. 26, 2012) (finding the plaintiff's bare assertion that he "has not been given his medical records" insufficient to justify a denial of a motion for summary judgment under Rule 56(d)).

### 4. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust any available administrative remedies before bringing an action for claims arising out of their

---

[12] "As the Second Circuit has made clear, Rule 56(d) does not permit Plaintiff to engage in a '"fishing expedition" in the hope that he could come up with some tenable cause of action.'" <u>Corley</u>, 2019 WL 3841939, at *13 (quoting <u>Waldron v. Cities Serv. Co.</u>, 361 F.2d 671, 673 (2d Cir. 1966), <u>aff'd</u> <u>sub</u> <u>nom.</u> <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253 (1968)).

incarceration.  See 42 U.S.C. § 1997e(a).[13]  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages.  See id. at 524.  "To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he is incarcerated."  Adams v. Annucci, 537 F. Supp. 3d 475, 477-78 (W.D.N.Y. 2021); see Jones v. Bock, 549 U.S. 199, 218 (2007) (explaining that the applicable procedural rules "are defined not by the PLRA, but by the prison grievance process itself").

"Exhaustion is mandatory—unexhausted claims may not be pursued in federal court."  Amador v. Andrews, 655 F.3d 89, 96 (2d Cir. 2011).  Nonetheless, "the defendants have the burden of proving that [the plaintiff's] claim has not been exhausted[.]"  Key v. Toussaint, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).  A defendant satisfies this burden by "establishing . . . that a grievance process exists" and that the plaintiff failed to utilize the grievance procedure.  Hubbs v. Suffolk Cnty. Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015) (citing Mojias v. Johnson, 351 F.3d 606, 610 (2d Cir. 2003), and Snider v. Melindez, 199 F.3d 108, 114 (2d Cir. 1999)).  "However, once a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless failed to exhaust those

---

[13] "[E]ven though confined to the CNYPC at the time in question, plaintiff would still qualify as a prisoner subject to the requirements of the PLRA." McQuilkin v. Cent. N.Y. Psychiatric Ctr., No. 9:08-CV-00975 (TJM/DEP), 2010 WL 3765847, at *10 (N.D.N.Y. Aug. 27, 2010), report and recommendation adopted, 2010 WL 3765715 (N.D.N.Y. Sept. 20, 2010).

remedies, the plaintiff must then counter the defendant's proof by showing that, as to him or her, the remedy was unavailable." Coleman v. Nolan, No. 9:15-CV-40 (ATB), 2018 WL 4732778, at *4 (N.D.N.Y. Oct. 2, 2018) (citing Smith v. Kelly, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013)).

### a. Whether Plaintiff Exhausted His Administrative Remedies

There is no genuine dispute that at all relevant times, CNYPC had in place a grievance program.[14] See Dkt. No. 51-14 at 2-5. Parties concede that plaintiff used CNYPC's grievance process to file grievances resulting from his second treatment period at CNYPC, while under the care of Dr. Khan. See Compl. at 26-28, 36, 40, 44, 48, 50; see also Dkt. No. 51-16 at 24. However, defendants contend that "a review of the grievances [plaintiff] submitted show that they were all filed from April, 2020 and later[.]" Dkt. No. 51-16 at 24. Defendants assert that "[p]laintiff did not file any grievance during or in close proximity to his initial treatment period between September 13, 2018[,] to March 20, 2019[,]" and, therefore, the portion of his claim that relates to this time period—his claims against Dr. Beale and Dr. Liu—"must be dismissed for failure to exhaust." Id.

"[T]he PLRA requires 'proper exhaustion,' which '"means using all steps that the agency holds out, and doing so properly[.]'" Ruggiero v. Cnty. of Orange, 467 F.3d 170, 176 (2d Cir. 2006) (quoting Woodford v. Ngo, 548 U.S. 81, 90 (2006), and Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on

---

[14] Plaintiff acknowledges that CNYPC "has its' own mechanism for how grievances are handled and eventually resolved." Compl. at 8, ¶4.

the course of its proceedings." Woodford, 548 U.S. at 90–91. "[F]ailure to file a timely grievance constitutes failure to exhaust administrative remedies as required by the PLRA." Cole v. Miraflor, No. 02-CV-09981 (RWS), 2003 WL 21710760, at *2 (S.D.N.Y. July 23, 2003) (collecting cases); see also Williams v. Comstock, 425 F.3d 175, 177 (2d Cir. 2005) (finding that "the [plaintiff's] failure to timely file [his] grievance in accordance with [the inmate grievance program] rules amounted to a failure to exhaust administrative remedies").

Plaintiff admitted during his deposition testimony that he did not file a grievance during his first treatment period at CNYPC. See Dkt. No. 51-10 at 64-65. Plaintiff nevertheless insists that he "exhausted all [of his] remedies" because he "joined" his grievances against Dr. Beale and Dr. Liu with his grievance against Dr. Khan. Dkt. No. 51-10 at 65, 102. According to CNYPC's Correction-Based Complaints Policy, "[c]omplaints may be initiated at any point during treatment and up to thirty calendar days after termination of services." Dkt. No. 51-14 at 2. Thus, plaintiff was required to file a complaint as to his first treatment period any time between September 13, 2018—the date of his admission to CNYPC—and April 19, 2019—30 days following his discharge from CNYPC. See Dkt. No. 51-1 at 2, ¶7; see also Dkt. No. 51-3 at 2, ¶6. Plaintiff did not file his first grievance until September 3, 2020; thus, the grievances he filed apply only to his second treatment period at CNYPC. See Compl. at 26-28. Accordingly, defendants have satisfied their burden establishing that plaintiff failed to exhaust his administrative remedies as to his initial treatment period at CNYPC between September 13, 2018, and March 20, 2019. It is recommended that plaintiff's claims

against Dr. Beale and Dr. Liu be dismissed for failure to exhaust administrative remedies.

### b. Availability as to Plaintiff

Viewing the facts in the light most favorable to plaintiff, the record suggests that plaintiff may have misunderstood the grievance procedure at CNYPC.  See Dkt. No. 51-10 at 64-65 (testifying that he "joined the grievance with Dr. Beal [sic], Dr. Liu, and Dr. Khan," when he filed his complaint during his second admission to CNYPC).  The PLRA contains an exception to an inmate's obligation to exhaust administrative remedies—an inmate must exhaust only those remedies that are available.  See Ross v. Blake, 578 U.S. 632, 638-39 (2016); see also Capolongo v. Brann, No. 1:21-CV-01469 (VEC/SDA), 2023 WL 5417161, at *4 (S.D.N.Y. May 19, 2023), report and recommendation adopted, 2023 WL 5396496 (S.D.N.Y. Aug. 22, 2023).  The Supreme Court has identified three circumstances under which an administrative remedy is unavailable to an inmate: (1) when the remedy "operates as a simple dead end"; (2) when the remedy is "so opaque that it becomes, practically speaking, incapable of use," i.e., "no ordinary prisoner could navigate" the process; and (3) "when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation."  Ross, 578 U.S. at 643-44.  "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements."  Hubbs, 788 F.3d at 59.

Before Ross, the Second Circuit had suggested that failure to inform an inmate plaintiff of the grievance procedure could raise a question of material fact as to whether administrative remedies were available.  See Ruggiero, 467 F.3d at 178.  Consistent

20

with that guidance, in several pre-Ross cases, this District concluded that issues of fact precluded pretrial resolution of the defense of exhaustion.  See Brown v. Doe, No. 9:12-CV-1346 (GTS/TWD), 2014 WL 1239679, at *6 (N.D.N.Y. Mar. 25, 2014) (holding that the inmate plaintiff's claims of ignorance of the grievance procedure raised a question of fact whether the remedy was available); see also Rosario v. Anson, No. 9:12-CV-1506 (GLS/CFH), 2013 WL 5236568, at *7 (N.D.N.Y. Sept. 17, 2013) ("'Under certain circumstances, a correctional institution's failure to provide an inmate with sufficient information about the available grievance procedures may excuse his failure to exhaust administrative remedies.'") (quoting Arnold v. Goetz, 245 F. Supp. 2d 527, 536 (S.D.N.Y. 2003)).  "Courts in this Circuit, however, have read the 2016 Ross decision to 'limit[ ] meaningfully the scope of the availability inquiry' by narrowing the 'special circumstances' that can support a finding that a remedy was unavailable."  House v. City of New York, No. 18-CV-6693 (PAE/KNF), 2020 WL 6891830, at *8 (S.D.N.Y. Nov. 24, 2020) (quoting Vidro v. Erfe, No. 3:18-CV-00567 (CSH), 2019 WL 4738896, at *8 (D. Conn. Sept. 26, 2019)).  Such cases have held that an inmate's unawareness of an administrative remedy does not render it unavailable unless the inmate was unaware due to "machination, misrepresentation, or intimidation" on the part of facility administrators.  See id.; see also Galberth v. Washington, No. 14-CV-691 (KPF), 2017 WL 3278921, at *11 (S.D.N.Y. July 31, 2017), aff'd, 743 F. App'x 479 (2d Cir. 2018) (summary order) (holding that Ross heightened the unavailability showing articulated in Ruggerio).

Here, plaintiff fails to claim that the reason he did not file a grievance during his first admission was due to "machination, misrepresentation, or intimidation" on the part of

CNYPC administrators.  See generally Compl.  Moreover, plaintiff does not contend that any misunderstanding he may have had of the grievance procedure was due to ambiguous language in CNYPC's Correction-Based Complaints Policy, making the grievance procedure "unavailable."  See Hurst v. Mollnow, No. 9:16-CV-1062 (DNH/TWD), 2018 WL 4178226, at *8 (N.D.N.Y. July 20, 2018), report and recommendation adopted, 2018 WL 4153926 (N.D.N.Y. Aug. 30, 2018); cf. Williams v. Priatno, 829 F.3d 118, 124 (2d Cir. 2016) (observing that administrative remedies are unavailable if the regulatory scheme providing for appeal is so opaque and confusing that the inmate could not use it).  By contrast, plaintiff timely filed a complaint regarding his second treatment period at CNYPC, suggesting that he sufficiently understood the grievance process.  See Compl. at 26-28.  Thus, no exception to the exhaustion requirement applies here.  See Handy v. City of New York, No. 19-CV-03885 (MKV/OTW), 2021 WL 4482548, at *6 (S.D.N.Y. Aug. 27, 2021) (granting summary judgment for failure to exhaust when there were "neither allegations in the pleadings nor evidence in the record that [the p]laintiff exhausted his administrative remedies or that such remedies were not available to [the p]laintiff"), report and recommendation adopted, 2021 WL 4481600 (S.D.N.Y. Sept. 30, 2021).

Accordingly, as defendants have met their burden of establishing that no genuine issue of material fact exists concerning plaintiff's failure to exhaust his administrative remedies with respect to his claims against Dr. Beale and Dr. Liu, the undersigned recommends granting defendants' Motion for Summary Judgment as to those claims.

**c. Dismissal with Prejudice**

22

"Ordinarily, the proper remedy where a prisoner has failed to satisfy the exhaustion requirement is to dismiss the complaint without prejudice, to give the inmate a chance to exhaust his administrative remedies and then refile his complaint."  Brown v. Napoli, 687 F. Supp. 2d 295, 298 (W.D.N.Y. 2009) (citing Chisholm v. N.Y.C. Dep't of Corr., No. 08-CV-8795, 2009 WL 2033085, at *3 (S.D.N.Y. July 13, 2009)).  "This is so even when the issue is decided on a motion for summary judgment."  Mateo v. Corebine, No. 09-CV-4811 (RJH/DCF), 2010 WL 3629515, at *7 (S.D.N.Y. Sept. 17, 2010) (collecting cases).  However, if an inmate has failed to exhaust available administrative remedies and the time in which to exhaust has expired, it is proper for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile.  See Berry v. Kerik, 366 F.3d 85, 88 (2d Cir. 2004); see also Richard v. LeClaire, 9:15-CV-0006 (BKS/TWD), 2019 WL 5197041, at *9 (N.D.N.Y. May 6, 2019) ("Because [the p]laintiff's failure to exhaust is at this point incurable, the Court recommends that summary judgment for failure to exhaust administrative remedies be with prejudice."), report and recommendation adopted, 2019 WL 4233184 (N.D.N.Y. Sept. 6, 2019).

The incidents giving rise to plaintiff's complaints against Dr. Beale and Dr. Liu occurred between September 2018 and March 2019.  See Dkt. No. 24-7 at 9.  As discussed, plaintiff was required to file any grievance against Dr. Beale and Dr. Liu by April 2019.  See supra Subsection III.A.4.a.  Plaintiff's argument that he "joined" his grievances against Dr. Beale and Dr. Liu with his grievance against Dr. Khan does not excuse his failure to exhaust within the time period nor does the timely complaint against Dr. Khan transform any belated complaints against Dr. Beale and Dr. Liu into timely ones.  Thus, the time for plaintiff to exhaust administrative remedies "has long

since expired." <u>Calderon v. Doe</u>, No. 9:20-CV-0645 (GLS/CFH), 2021 WL 6278740, at

*6 (N.D.N.Y. Nov. 24, 2021), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, 2022 WL 43918

(N.D.N.Y. Jan. 5, 2022).  As plaintiff's failure to exhaust cannot be remedied at this

point, it is recommended that his claims against defendants Dr. Beale and Dr. Liu be

dismissed with prejudice.  <u>See</u> <u>Richard</u>, 2019 WL 5197041, at *9.

### B. Fourteenth Amendment Claims

Plaintiff argues that Dr. Khan violated his "due process rights."  Dkt. No. 51-10 at

124, ll. 2-12.  Plaintiff asserts that Dr. Khan "deviat[ed] from the standard of care" by

prescribing him Risperdal "against [his] will and without a Court order."  <u>Id.</u> at 123, 127.

Plaintiff further contends that he lacked informed consent, as Dr. Khan "never told [him]

not one thing about any side effects [of Risperdal]."  <u>Id.</u> at 84, ll. 8-9.

### 1. Forced Administration of Medication

An inmate "possesses a significant liberty interest in avoiding the unwanted

administration of antipsychotic drugs under the Due Process Clause of the Fourteenth

Amendment."  <u>Washington v. Harper</u>, 494 U.S. 210, 221-22 (1990); <u>see</u> <u>also</u> <u>U.S. v.</u>

<u>Hardy</u>, 724 F.3d 280, 296 (2d Cir. 2013) (same).  However, "given the requirements of

the prison environment, the Due Process Clause permits the State to treat a prison

inmate who has a serious mental illness with antipsychotic drugs against his will, if the

inmate is dangerous to himself or others and the treatment is in the inmate's medical

interest."  <u>Washington</u>, 492 U.S. at 227; <u>see</u> <u>Odom v. Bellevue Hosp. Ctr.</u>, No. 93-CV-

2794 (CSH), 1994 WL 323666, at *3 (S.D.N.Y. July 5, 1994) ("[I]t is well-settled that a

patient's liberty interest in not being involuntarily medicated is overridden in an

emergency, where failure to medicate forcibly would result in a substantial likelihood of

physical harm to that patient, other patients, or to staff members of the institution."); see also Pabon v. Wright, 459 F.3d 241, 252 (2d Cir. 2006) ("The state may infringe upon a prisoner's constitutional rights so long as the infringing regulation or policy is 'reasonably related to legitimate penological interests.'") (quoting Washington, 494 U.S. at 223, and citing Turner v. Safley, 482 U.S. 78, 89 (1987)).  The Second Circuit has cautioned that "'deference . . . is owed to medical professionals who have the fulltime responsibility of caring for mentally ill inmates . . . and who possess, as courts do not, the requisite knowledge and expertise to determine whether the drugs should be used in an individual case.'"  Hardy, 724 F.3d at 295 (quoting Washington, 494 U.S. at 231); see Anthony v. City of New York, 339 F.3d 129, 142 (2d Cir. 2003) (holding that the involuntary medication of the plaintiff did not violate Due Process Clause where hospital "staff reasonably believed that [the plaintiff] was a danger to herself or to others").

Here, plaintiff's complaint and deposition testimony, construed in a light most favorable to him, alleges that he was forced to take Risperdal against his will and without justification after he complained about the side effects to Dr. Khan.  See Compl.; see also Dkt. No. 51-10.  Dr. Khan's evidence suggests otherwise.  Dr. Khan's declaration, coupled with the contemporaneous progress reports that various CNYPC personnel prepared, all indicate that plaintiff took Risperdal voluntarily.  See Dkt. No. 51-5; see also Dkt. Nos. 52, 52-1, 52-2.  Specifically, Dr. Khan declares that "[a]t no time did [he] prescribe, administer, or compel the involuntarily administration of Risperdal or Risperidone [to p]laintiff during [his] treatment of him."  Dkt. No. 51-5 at 2.

Dr. Khan also submits his progress notes which substantiate his claim that plaintiff took the medication voluntarily.  See Dkt. No. 51-6.  Upon plaintiff's screening

admission on January 9, 2020, Dr. Khan noted that plaintiff said, "give me my

risperidone, put me in a single room, I will be fine."  Dkt. No. 52-1 at 35.  On January 16,

2020, Dr. Khan wrote in his progress notes that plaintiff told him he was on Risperidone

in the past and "it's cool, I like risperidone."  Dkt. No. 51-6 at 7.  On February 11, 2020,

Dr. Khan noted that plaintiff said he has been "alright with meds" and that Risperdal

helps him to fall asleep.  Id. at 15.  Dr. Khan wrote on March 10, 2020, that plaintiff said,

"I like the meds, I like both risperidone and Zoloft, no problem with it."  Id. at 24.  Dr.

Khan noted on March 26, 2020, that plaintiff again told him, "I like the meds."  Id. at 29.

On April 2, 2020, Dr. Khan noted that plaintiff:

> said he had a [sic] enlarged breast with Risperidone in the
> past but is not having that problem this time yet.  P[laintiff]
> was discussed of the risks, including increasing prolactin
> level, enlarged breast and possible milk can come out of the
> breast, he said he knows these side effects very well and
> wanted to continue with this medication since the medication
> is helping him with his paranoia and disorganized behaviors.
> [Plaintiff] wanted to take [the] schedule[d] injection.  [Dr.
> Khan r]ecommended [plaintiff] that [they] order a prolactin
> [lab test] and if it is higher than normal then [they] will switch
> [to a different drug].  [Plaintiff was] agreeable with the plan.

Id. at 34.  Dr. Khan declares that "[t]he April 2, 2020 concerns expressed by [p]laintiff

were the first instance during which he expressed any concern regarding Risperidone.

At that time, he did not appear to be experiencing any side effects to Risperidone, but it

was prudent to take labs to check his prolactin levels."  Dkt. No. 51-5 at 5, ¶16.

"The decisions of physicians regarding the care and safety of patients are entitled to

a presumption of correctness."  Kulak v. City of New York, 88 F.3d 63, 77 (2d Cir. 1996)

(citing Youngberg v. Romeo, 457 U.S. 307, 324 (1982)).  Where the plaintiff fails to

produce sufficient evidence to demonstrate that he or she was forcibly medicated in

violation of the Fourteenth Amendment, and the defendant submits evidence establishing the contrary, summary judgment is appropriate.  See George v. Rockland State Psychiatric Ctr., No. 10-CV-8091 (NSR), 2014 WL 5410059, at *6-7 (S.D.N.Y. Oct. 23, 2014); see also Roy v. Alicia, No. 9:19-CV-585 (LEK/ATB), 2021 WL 966010, at *6 (N.D.N.Y. Feb. 3, 2021) (dismissing the plaintiff's Fourteenth Amendment forced medication claim because the "[p]laintiff '[could] not rely on [the] conclusory allegations or unsubstantiated speculation' alleged in his pleadings or set forth in his deposition to demonstrate a genuine issue of material fact") (quoting Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005)) (additional citations omitted), report and recommendation adopted sub nom. Roy v. Laperla, 2021 WL 964135 (N.D.N.Y. Mar. 15, 2021).  In Vega v. Rell, the inmate plaintiff brought a substantive due process claim against the defendants for "prescribing [medication] without his express consent."  Vega v. Rell, No. 3:09-CV-737 (VLB), 2012 WL 2860793, at *7 (D. Conn. July 9, 2012), aff'd, 611 F. App'x 22 (2d Cir. 2015) (summary order).  However, "the plaintiff's medical records indicate[d] that . . . the plaintiff was not forced to take the drug."  Id. at *8.  The Court thus concluded that the plaintiff's Fourteenth Amendment rights were not violated, and, therefore, granted the defendants' motion for summary judgment.  See id. at *9.

Similarly, in George v. Rockland State Psychiatric Center, the plaintiff alleged that the defendants "attempted to force him to take psychotropic medications" in violation of his due process rights.  George, 2014 WL 5410059, at *6.  However, because there was no evidence that the defendants attempted to forcibly medicate the plaintiff, the Court determined that the "plaintiff [could ]not defeat summary judgment simply by relying on the allegations in his complaint," and concluded that the defendants were entitled to

summary judgment.  Id. at *6-7; see also O'Diah v. Cully, No. 9:08-CV-941 (TJM/CFH), 2013 WL 1914434, at *14 (N.D.N.Y. May 8, 2013) ("[D]espite [the plaintiff]'s conclusory allegations [that he was forcibly medicated], the record is devoid of any evidence suggesting that . . . [the plaintiff] was forced to take any medication[; therefore, n]o genuine issue of material fact exists with regard to this claim.").

Conversely, courts in this Circuit have denied summary judgment in forced medication cases where there are "clear factual disputes[.]"  Triplett v. Asch, No. 9:17-CV-656 (MAD/TWD), 2020 WL 5238802, at *10 (N.D.N.Y. June 2, 2020), report and recommendation adopted, 2020 WL 3424496 (N.D.N.Y. June 23, 2020).  In Roland v. McMonagle, the inmate plaintiff brought a Fourteenth Amendment claim against the defendants for "coerc[ing] him to take a sedative[.]"  Roland v. McMonagle, No. 12-CV-6331 (JPO), 2015 WL 5918179, at *1 (S.D.N.Y. Oct. 9, 2015).  The plaintiff claimed that the defendants threatened violence to compel him to take a medication, and the defendants averred that they did not.  See id. at *3-4.  However, the defendants offered no evidence to support their position.  See id.  Thus, "there remain[ed] a genuine dispute" of fact, and the Court denied summary judgment.  Id. at *5.

Similarly, in Brown v. Ionescu, the inmate plaintiff brought a substantive due process claim against the defendant "for violating his liberty interest in freedom from unwanted medical treatment."  Brown v. Ionescu, No. 02-CV-1218 (LMM), 2004 WL 2101962, at *3 (S.D.N.Y. Sept. 21, 2004).  The plaintiff claimed that he told the defendant that he did not want the medical treatment, and the defendant went forward with the treatment despite the plaintiff's explicit objections.  See id. at 5.  The Court noted that "neither party . . . produced evidence, outside of his own statements, to show whether [the

plaintiff] actually refused the [medical treatment]." Id. Specifically, "consent forms for the [procedure] ha[d] not been submitted by either party." Id. The Court concluded that "[b]ecause there are material issues of fact in dispute, the violation of [the plaintiff]'s Fourteenth Amendment liberty interest in refusing unwanted medical treatment cannot be decided on summary judgment." Id.; see also Triplett, 2020 WL 5238802, at *10 (denying summary judgment where there were multiple factual disputes regarding the plaintiff's forced medication claim).

Plaintiff alleges that "[on] April 2, 2020 [he] told Dr. Khan that [he] no longer wanted to continued [sic] to take Risperdal" but Dr. Khan still gave "the injection by force." Compl. at 78. However, plaintiff has not submitted any evidence to support such assertion. See Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y.1995) ("[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment.") (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)). Specifically, plaintiff has not pointed to anything within his medical record to indicate that Dr. Khan forcibly medicated him. See Vega, 2012 WL 2860793, at *7-10; see also George, 2014 WL 5410059, at *6-7. Thus, plaintiff has failed to refute Dr. Khan's compelling evidence establishing that plaintiff voluntarily took Risperdal while at CNYPC. Cf. Brown, 2004 WL 2101962, at *5. As such, summary judgment is warranted on plaintiff's Fourteenth Amendment involuntary medication claim against Dr. Khan. See Fisk v. Letterman, 501 F. Supp. 2d 505, 525 (S.D.N.Y. 2007) (granting the defendants' motion for summary judgment where the plaintiff "offered no evidence" to support her claim that the defendants administered Risperdal against her will). It is

therefore recommended that plaintiff's Fourteenth Amendment involuntary medication claim against Dr. Khan be dismissed.

### 2. Lack of Informed Consent

The Second Circuit has held that, "in order to permit prisoners to exercise their right to refuse unwanted treatment, there exists a liberty interest in receiving such information as a reasonable patient would require in order to make an informed decision as to whether to accept or reject proposed medical treatment." Pabon, 459 F.3d at 250–51. To establish a violation of the Fourteenth Amendment right to medical information, "a prisoner must show that (1) government officials failed to provide him with such information; (2) this failure caused him to undergo medical treatment that he would have refused had he been so informed; and (3) the officials' failure was undertaken with deliberate indifference to the prisoner's right to refuse medical treatment." Id.; Alston v. Bendheim, 672 F. Supp. 2d 378, 384 (S.D.N.Y. 2009) ("[T]he Second Circuit held that this liberty interest in refusing treatment 'carries with it a concomitant right to such information as a reasonable patient would deem necessary to make an informed decision regarding medical treatment.'") (quoting Pabon, 459 F.3d at 246).

Plaintiff testified that Dr. Khan "never told [him] not one thing about any side effects that [Risperdal] could cause." Dkt. No. 51-10 at 85, ll. 8-9. Even assuming, arguendo, that Dr. Khan failed to provide plaintiff with information about Risperdal's side effects, plaintiff's claim that he lacked informed consent cannot succeed. First, plaintiff has not established that he would have declined to take Risperdal if Dr. Khan had fully explained the possible side effects to him. See Pabon, 459 F.3d at 246; see also Thousand v. Wrest, No. 14-CV-06616 (CJS), 2016 WL 3477242, at *10-11 (W.D.N.Y.

June 27, 2016) (dismissing the plaintiff's Fourteenth Amendment claim where the plaintiff failed to "allege[ ] that he would have refused to take [the medication] if [the defendant] had explained the potential side-effects to him" and "[t]o the contrary, [the p]laintiff continued taking [the medication] for years" after learning of the side effects). In fact, "[p]laintiff admitted that he was fully aware of the risks when he took [Risperdal] at CNYPC because of having experienced these side-effects years earlier." Dkt. No. 51-16 at 19. As he testified in his deposition:

> Q: Is it fair to say that you knew what the potential side effects were because you had a lawsuit pending against [Johnson & Johnson and a former physician] for the gynecomastia and the prolactin levels?

> A: It is very fair to say that I – I knew that gynecomastia, the actual – the – the results gynecomastia has with Risperdal towards me and it's very fair to say that.

Dkt. No. 51-10 at 49-50, ll. 25-8; see discussion supra Subsection I.B.1. Thus, plaintiff concedes that he had actual knowledge of the side effects of Risperdal when Dr. Khan prescribed it to him.[15] Cf. White v. Napoleon, 897 F.2d 103, 113 (3d Cir. 1990) (finding that the plaintiff sufficiently alleged violation of his right to medical information where the defendant refused to answer the plaintiff's questions about whether a drug contained penicillin, to which he was allergic). Therefore, even if plaintiff created a question of fact as to whether Dr. Khan informed him of Risperdal's risks, he cannot demonstrate that Dr. Khan's alleged failure to inform him of Risperdal's side effects caused him to

---

[15] Plaintiff also appears to admit discussing the risks and side effects with Dr. Khan. See, e.g., Compl. at 22, 40, 48. For example, plaintiff states that Dr. Khan "prescribe[d him] Risperdal knowing the side effects" because plaintiff "warned [Dr. Khan] about the risks" by disclosing his past gynecomastia diagnosis. Id. at 40. Plaintiff reiterates that Dr. Khan "prescribe[d him] Risperdal knowing the side effects this medication Risperdal has[; he] also warned [Dr. Khan] about the risk [he] might have [if he] take[s it.]" Id. at 48.

"undergo medical treatment that he would have refused had he been so informed[.]" <u>Pabon</u>, 459 F.3d at 246.

Second, plaintiff has not established that Dr. Khan acted with deliberate indifference to plaintiff's right to refuse the medication.  <u>See</u> <u>Pabon</u>, 459 F.3d at 251 ("[I]n order to incur liability a prison official's failure to adequately inform a patient regarding that patient's proposed medical treatment must be done with, at a minimum, deliberate indifference to the prisoner's right to refuse treatment[.]").  "The Fourteenth Amendment test for deliberate indifference requires that [p]laintiff prove that [d]efendants deliberately withheld information about the objectionable medication, specifically for the purpose of inducing an inmate to accept that medication." <u>Smith v. Corizon Health Servs.</u>, No. 14-CV-08839 (GBD/SN), 2015 WL 6123563, at *2 (S.D.N.Y. Oct. 16, 2015) (citing <u>Pabon</u>, 459 F.3d at 254, and <u>Alston</u>, 672 F. Supp. 2d at 385).  As indicated above, plaintiff failed to introduce compelling evidence establishing that Dr. Khan deliberately withheld information about Risperdal's risks in order to induce plaintiff to accept the medication. <u>See</u> discussion <u>supra</u> Subsection III.B.2.  By contrast, Dr. Khan supports his motion with his progress notes[16] demonstrating that plaintiff "was discussed all the risks, including but not limited to increased weight, blood sugar, cholesterol, metabolic syndrome and increased prolactin which can cause enlarged breast[s;] benefits and alternative[s] of this medication [were also discussed but plaintiff] agreed to take [Risperdal.]"  Dkt. No. 52-1 at 40.  Thus, absent any evidence demonstrating that Dr. Khan was deliberately indifferent toward plaintiff's right to refuse Risperdal, Dr. Khan's alleged failure to inform plaintiff of potential side effects "amounts to, at most, medical malpractice or

---

[16] Dr. Khan's progress notes are dated January 9, 2020, the day he met with plaintiff.  <u>See</u> Dkt. No. 52-1 at 40.

negligence."  Sanders v. Ocean Cnty. Bd. of Freeholders, No. CV-16-5380 (MAS/LHG), 2021 WL 637828, at *3 (D.N.J. Feb. 18, 2021) (dismissing due process informed consent claim for failure to state a claim).

As "simple negligence [does] not suffice" in establishing "deliberate indifference to the prisoner's right to refuse treatment," the undersigned recommends granting summary judgment on plaintiff's Fourteenth Amendment informed consent claim against Dr. Khan.  Pabon, 459 F.3d at 251; see also Brandt v. Raphael, No. 9:13-CV-00533 (FJS/DJS), 2016 WL 1572439, at *5-7 (N.D.N.Y. Mar. 25, 2016) (dismissing, on summary judgment, the inmate plaintiff's Fourteenth Amendment claim for lack of informed consent because the plaintiff failed to establish that the defendants deliberately withheld information when prescribing the medication), report and recommendation adopted, 2016 WL 1559595 (N.D.N.Y. Apr. 18, 2016).

### C. Qualified Immunity

Defendants argue that, even if plaintiff's claims are substantiated, they are entitled to qualified immunity.  See Dkt. No. 51-16 at 22-23.  Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal quotation marks and citation omitted); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  Kaminsky v.

33

Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted).  A court must first determine whether, if the plaintiff's allegations are accepted as true, there would be a constitutional violation.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation.  See Aiken v. Nixon, 236 F. Supp. 2d 211, 230 (N.D.N.Y. 2002).

Here, plaintiff has not established a constitutional violation to satisfy the first prong of the qualified immunity test.  See supra Subsection III.B.  As there is no constitutional violation, the undersigned does not reach whether plaintiff's constitutional rights were clearly established at the time of the alleged violation.  See Aiken, 236 F. Supp. 2d at 230; see also Smith v. Sullivan, No. 9:20-CV-659 (DNH/CFH), 2023 WL 3727447, at *19 (N.D.N.Y. May 3, 2023) ("Here, the Court need not address qualified immunity as an alternative ground to [the] defendants' summary judgment motion because [the] plaintiff has not established a dispute of material fact as to whether [the] defendants violated his constitutional rights."), report and recommendation adopted, 2023 WL 3722137 (N.D.N.Y. May 30, 2023).

### D. State Law Claims

As the undersigned recommends granting defendants' summary judgment motion on the federal claims, the undersigned also recommends granting defendants' motion for summary judgment on plaintiff's related state law claims.

28 U.S.C. § 1367(c)(3) instructs that "the district courts may decline to exercise supplemental jurisdiction over a [state-law] claim . . . if . . . the district court has

dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "The decision is a discretionary one, and its justification 'lies in considerations of judicial economy, convenience[,] and fairness to litigants[.]'" Allen v. Cnty. of Cayuga, No. 9:17-CV-0018 (MAD/TWD), 2018 WL 11469532, at *14 (N.D.N.Y. June 25, 2018) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)), report and recommendation adopted, 2018 WL 11469516 (N.D.N.Y. Aug. 13, 2018).  However, "[t]he Second Circuit has instructed 'if [all] federal claims are dismissed before trial . . . the state claims should be dismissed as well.'" Id. (quoting Castellano v. Bd. of Tr., 937 F.2d 752, 758 (2d Cir. 1991)).

   As the undersigned recommends dismissing all of plaintiff's federal claims, it is also recommended that the Court decline to exercise supplemental jurisdiction over plaintiff's state law medical malpractice and negligence claims.  See MacInerney v. Allen, No. 5:21-CV-0818 (LEK/ML), 2022 WL 561649, at *4 (N.D.N.Y. Feb. 24, 2022) ("Having found that all of [the p]laintiff's federal claims are subject to dismissal, I recommend that, to the extent that [the p]laintiff has asserted any state law claims, the Court decline to exercise jurisdiction over those claims."), report and recommendation adopted, 2022 WL 1025841 (N.D.N.Y. Apr. 6, 2022); see also Green v. Venettozzi, No. 9:14-CV-1215 (BKS/CFH), 2018 WL 7917917, at *29 (N.D.N.Y. Nov. 21, 2018) ("The undersigned recommends dismissal of plaintiff's state law claims concerning negligence and medical malpractice in light of the recommendation of dismissal of the federal [constitutional] claims pertaining to the same set of facts."), report and recommendation adopted, 2019 WL 624922 (N.D.N.Y. Feb. 14, 2019).

## IV. Conclusion

**WHEREFORE**, for the reasons set forth above, it is hereby:

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 51) be **GRANTED**, and that plaintiff's claims against Dr. Mark Beale, Dr. Jean Liu, and Dr. Kamrul A. Khan be **DISMISSED with prejudice**; and it is

**ORDERED**, that the Clerk of the Court amend the case caption to correct the spelling of defendant's name as Dr. Mark Beale; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to U.S.C. § 636(b)(1) and Local Rule 72.1(c), that the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993) (citing <u>Small v. Secretary of Health and Human Servs.</u>, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §636(b)(1); FED R. CIV P. 6(a), 6(e), 72.[17]

Dated: December 13, 2023
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[17] If you are proceeding <u>pro se</u> and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. <u>See</u> FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. <u>See id.</u> § 6(a)(1)(C).